RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 9/21/11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| APRIL JONES | CIVIL ACTION NO. 10-0235 |
| VERSUS | JUDGE ROBERT G. JAMES |
| TAMARIO TURNER, ET AL. | MAG. JUDGE KAREN HAYES |

## RULING

Pending before the Court is Defendant Tamario Turner ("Turner") and the Town of Rayville's Motion for Summary Judgment. [Doc. No. 29]. Plaintiff April Jones ("Jones") filed a Response on August 2, 2011. [Doc. No. 33]. Defendants filed a Reply on August 11, 2011. [Doc. No. 36]. For the following reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

### I.  FACTS

Jones, a former probation officer with the Louisiana Office of Probation and Parole, brings this action against Turner, a Rayville police officer, in his individual capacity and official capacity, and against the Town of Rayville for alleged violations of the First and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983.

On February 13, 2009, Jones encountered Turner at a high school basketball game. Turner was standing next to Jones' friend, Danielle [sic] Ellis ("Ellis"). As Jones passed Turner and Ellis, she told Ellis that "next time he ought to hang around some real cops." [Doc. No. 29-3, p. 8]. Jones claims she made this remark in response to an incident in which Turner "roughed up" her nephew without cause. [Doc. No. 29, p. 12].

After this encounter, Turner called the Monroe probation office during business hours, identified himself as a police officer, and reported the incident to Jones' supervisors. Turner described the encounter with Jones at the basketball game as a loud disagreement about Jones' nephew that got out of hand [Doc. No. 29-4, p. 13], and Turner said Jones had "caused a scene" [Doc. No. 33-2, p. 17]. According to Jones, Turner also said that Jones "was loud, cursing, ranting, raving," "a loose cannon," and "wasn't good for the department." [Doc. No. 29-3, p. 15]. Jones claims to have heard these allegations from Pearl Wise (Wise"), a co-worker. The record, however, indicates Wise did not speak to Turner or hear his statements to Jones' supervisors. [Doc. No. 29-5, pp. 11-13].

## II. LAW and ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19

F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**B.     Analysis**

Jones claims that Turner, acting under the color of state law, retaliated against her for exercising her First Amendment right to free speech by making malicious statements against her, which caused her to be terminated from her position as a probation officer. Jones also alleges that she was deprived of fundamental rights without due process of law because of Turner's conduct. Jones claims the Town of Rayville is liable for tolerating and ratifying Turner's conduct, for failing to establish policies and procedures to train its police officers, and for failing to establish adequate procedures for handling allegations of police misconduct.

**1.     Retaliation and Qualified Immunity**

In response to Jones' claim of retaliation against him in his individual capacity, Turner raises the defense of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). There are two steps to a qualified immunity analysis: (1) "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right"; and (2) "whether the right at issue was clearly

established at the time of defendant's alleged misconduct." *Id.* at 232 (internal quotation marks and citations omitted).

To recover under a typical First Amendment retaliation claim, a plaintiff must satisfy four elements. First, a plaintiff must suffer an adverse employment decision. *See Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). Second, a plaintiff's speech must rest on a matter of public concern. *See Thompson v. City of Starkville*, 901 F.2d 456, 460 (5th Cir. 1990) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). Third, a plaintiff's interest in the speech must outweigh the employer's interest in promoting efficiency. *Id.* (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)). Finally, the speech must have motivated the employer's action. *Id.* (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)).

The instant case, however, concerns a First Amendment retaliation claim against a third party. Where a First Amendment retaliation claim does not involve an employment or other contractual relationship between the plaintiff and the government official, the Fifth Circuit applies the test announced in *Keenan v. Tejeda*: "[T]o establish a *First Amendment* retaliation claim against an ordinary [government official], [a plaintiff] must show that (1) [she was] engaged in constitutionally protected activity, (2) the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." 290 F.3d 252, 258 (5th Cir. 2002).

Unlike a traditional retaliation plaintiff, a plaintiff in the *Keenan* context does not need to prove her interest in the speech outweighs the employer's interest in promoting efficiency. *Frazier v. Hataway*, No. 02-30078, 2003 WL 261768, at *2 (5th Cir. 2003). As the Fifth Circuit has

4

explained, the requirements are identical in all other respects. *Id.* Therefore, a plaintiff in the *Keenan* context must still demonstrate the speech involved an issue of public concern to establish that her communication was constitutionally protected.

In the Fifth Circuit, "[i]ssues rise to the level of public concern if an individual speaks primarily in his role as a citizen rather than as an employee, or if the information conveyed is of 'relevance to the public's evaluation of the performance of government agencies.'" *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991) (quoting *Day v. South Park Indep. Sch. Dist.*, 768 F.2d 696, 700 (5th Cir. 1985)); s*ee also Harris*, 635 F.3d at 692 ("Rather than looking at whether the public would have an interest in the matter, the court examines whether the speaker's motivation was to speak primarily as a citizen or employee."); *Chavez v. Brownsville Indep. Sch. Dist.*, 135 Fed. App'x 664, 669 (5th Cir. 2005) ("We determine whether the plaintiff '[spoke] primarily in his role as a citizen rather than as an employee addressing matters only of personal concern.'") (quoting *Fiesel v. Cherry*, 294 F.3d 664, 668 (5th Cir. 2002)); *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986) ("[T]he mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment."). Courts make this determination "by the content, form, and context of a given statement, as revealed by the whole record." *Coughlin*, 946 F.2d at 1156 (quoting *Connick*, 461 U.S. 147-48)).

In nearly all the cases where courts have ruled an employee's speech concerned an unprotected, private issue, the communication involved an employee's criticism of the employee's immediate supervisor or co-workers. *See, e.g., Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 692 (5th Cir. 2011) (ruling speech by a former teacher calling her superintendent a liar on the phone and allegedly using profanity in the same conversation concerned a private issue); *Ayoub v. Texas*

5

*A & M Univ.*, 927 F.2d 834, 837 (5th Cir. 1991) (holding that a professor's complaint about a pay scale was an issue of private concern where the complaint focused on the professor's individual compensation); *Benningfield*, 157 F.3d at 375 (ruling a police department's employees' complaints of discrimination and a hostile work environment logged against coworkers and immediate superiors constituted both public and private speech); *Connick v. Myers*, 461 U.S. 138, 148 (1983) (ruling a questionnaire about employee morale and transfer policies in the employee's office to be an issue of private concern). Such a result is consistent with the Supreme Court's decision in *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), which sought to "arrive at a balance between the interest of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."[1]

In contrast, courts frequently find a communication to involve a matter of public concern when the speech does not focus on the speaker's immediate coworkers and supervisors. *See, e.g., Thomas v. Harris Cnty.*, 784 F.2d 648, 653 (5th Cir. 1986) (ruling a police officer's criticism of a department-wide policy of leniency toward a private security firm constituted speech on an issue of public concern); *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 249 (5th Cir. 1984) (ruling a teacher's

---

[1] Although the Supreme Court's use of the "public concern" terminology, taken out of context, might indicate government employees only enjoy First Amendment protection for statements made about subjects of traditional public debate, like political discourse, such an interpretation would distort the purpose of the distinction. *See Pickering,* 391 U.S. at 574 ("[I]n a case [where] the fact of government employment is only tangentially and insubstantially involved in the subject matter of the public communication made by a teacher, we conclude that it is necessary to regard the teacher as the member of the general public he seeks to be."); *Connick*, 461 U.S. at 157 (Brennan, J., dissenting) ("The balancing test articulated in *Pickering* comes into play only when a public employee's speech implicates the government's interests as an employer. When public employees engage in expression unrelated to their employment while away from the workplace, their *First Amendment* rights are, of course, no different from those of the general public.").

criticism of a school board's participation in a federal literacy program constituted speech on a matter of public concern); *Pickering*, 391 U.S. at 571 (extending First Amendment protection to a public school teacher's criticism of a school board's allocation of resources between athletics and academics).

Here, the context of the communication indicates that Jones uttered her remark in her role as a citizen, not as a government employee. Jones made the communication away from her government office, outside of business hours, at a time when she was not fulfilling any official duties. Additionally, the content and form of the communication are best characterized as involving a public concern. Jones verbally criticized a police officer for what she perceives to be misconduct by the officer. Since she does not interact with Turner in her official capacity, such speech does not threaten her ability to work with her immediate co-workers, and does not impede the functioning of the Monroe Probation Office.

Although Jones' choice of words ("hang around some real cops") was less than elegant, the Supreme Court has made clear that "the arguably 'inappropriate or controversial character of a statement is irrelevant to the question of whether it deals with a matter of public concern.'" *Snyder v. Phelps*, 131 S. Ct. 1207, 1215 (2011) (ruling that display of highly offensive placards near a funeral procession, including ones that read "You're Going to Hell" and "God Hates You," addressed issues of public concern) (citing *Rankin v. McPherson*, 483 U.S. 378, 387 (1987)). As the Supreme Court has repeatedly emphasized, "criticism of government is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). Thus, the Court finds that Jones has raised a genuine issue of material fact for trial as to whether Jones has suffered a constitutional violation.

Nevertheless, qualified immunity will shield Turner from liability unless the right he allegedly violated was clearly established. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Keenan*, 290 F.3d at 261 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). This does not, however, require that the "very action in question [have] previously been held unlawful." *Warnock v. Pecos Cnty.*, 116 F.3d 776, 782 (5th Cir. 1997) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Here, a reasonable officer should have known that he may not use his government position to have another individual fired for criticizing the officer. The Fifth Circuit case law clearly indicates that "government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable." *Keenan*, 290 F.3d at 261. Although Jones is a government employee, the Fifth Circuit has never indicated that an individual sacrifices her right to criticize a police officer with whom she does not professionally interact merely on the basis of her employment. In *Frazier v. Hataway*,[2] No. 02-30078, 2003 WL 261768 (5th Cir. 2003), the Fifth Circuit considered a § 1983 suit against a sheriff who allegedly influenced a district attorney to terminate the plaintiff because he supported the sheriff's political opponent. There, the Court ruled that the unconstitutional nature of such retaliation would have been apparent to any reasonable officer and denied the qualified immunity defense. *Id.* at *2.

Viewing the allegations in the light most favorable to the plaintiff, Turner should have known that calling Jones's employer during working hours, identifying himself as a police officer, and requesting, either explicitly or implicitly, that Jones's employment be terminated would violate

---

[2] Although *Frazier* is unpublished and thus not precedent, it is persuasive authority.

Jones' First Amendment rights. Therefore, Turner cannot establish that he is entitled to qualified immunity, and Defendant's Motion for Summary Judgment on this claim is DENIED. At trial, Plaintiff will still need to demonstrate the final two factors of the *Keenan* test: "(2) the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." 290 F.3d 252, 258 (5th Cir. 2002).

### 2. Due Process

Jones also claims that Turner's actions deprived her of the benefits of her government employment without due process of law under the Fourteenth Amendment.

#### a. Protected Property Interest

First, it is unclear whether Jones can maintain an action against Turner, rather than the probation office, for terminating her employment without due process of law. Assuming Jones could bring such a suit against Turner, he is entitled to summary judgment because Jones cannot demonstrate a property or liberty interest. "Only government employees who can show that they have a property interest in continued employment are entitled to the procedural due process protections of the Fourteenth Amendment." *Rodriguez v. Escalon*, 90 Fed. App'x 776, 778 (5th Cir. 2004). At-will employees do not have a property interest in continued employment under the Fourteenth Amendment's Due Process Clause. *Id.* at 779.

State law determines whether a person's employment is "at will." *See Wallace v. Shreveport Memorial Library*, 79 F.3d 427, 429 (5th Cir. 1996). Under Louisiana law, public employees are

at-will employees unless they have a contract stating they will be fired only for cause or they are "permanent classified employee[s] under the Louisiana civil service system." *Id.*

The record in this case establishes that Jones was still in a probationary period of employment with the probation office when she was terminated and that she understood that her employment was at-will. [Doc. Nos. 29-3, p. 18, & 29-4, pp. 8, 73 & 95]. Therefore, Jones had no property interest in continued employment under the Fourteenth Amendment's Due Process Clause, and her claim fails.

### b. Liberty Interest

Jones might also assert a due process claim against Turner for violating her Fourteenth Amendment liberty interest to be free from stigma, but to do so, Jones must "show stigma plus an infringement of some other interest." *Blackburn*, 42 F.3d at 935-36. "To satisfy the stigma prong of this test, 'the plaintiff must prove that the stigma was caused by a *false* communication.'" *Id.* at 936 (quoting *Phillips v. Vandygriff*, 711 F.2d 1217, 1221 (5th Cir. 1983)). The Fifth Circuit "has found sufficient 'stigma' only in concrete, false factual representations or assertions, by a state actor, of wrongdoing on the part of the claimant." *Kacal*, 928 F.2d at 701.

Jones alleges in her complaint that Turner made false, malicious allegations against her. The summary judgment evidence demonstrates Turner reported to the probation office only that Jones had "caused a scene" and stated that Turner was not a real police officer [Doc. No. 33-2, pp. 17 & 36], and that Turner described the encounter with Jones at the basketball game as a loud disagreement about Jones' nephew that got out of hand [Doc. No. 29-4, p. 13]. As to her other allegations—that Turner said she "was loud, cursing, ranting, raving," "a loose cannon," and "wasn't

10

good for the department"—she relies on inadmissible hearsay evidence,[3] *see* [Doc. Nos. 29-3, p. 15, & 29-5, pp. 11-13], which "cannot be used to create a genuine issue of material fact to avoid summary judgment." *Harris*, 635 F.3d at 692 (citing *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976)).

Jones admits that she said to her friend, Ellis, in Turner's presence that he "should hang around some real cops." Further, Turner's conclusory characterizations that Jones "caused a scene" and that he and Jones had a loud disagreement do not rise to the level of "concrete, false factual representations or assertions, by a state actor, of wrongdoing on the part of" Jones. *Kacal*, 928 F.2d at 701. Turner's alleged statement that Jones caused a scene is a broad, subjective characterization, not a concrete, false factual representation, and Turner's alleged statement that he and Jones were involved in a loud disagreement that got out of hand does not impute wrongdoing to Jones. Therefore, as Jones fails to allege sufficient stigma, any claims Jones attempts to make for a deprivation of liberty through stigma under the Fourteenth Amendment fail.[4]

Because both of Jones' potential due process claims fail, Defendants' Motion for Summary Judgment on these claims is GRANTED.

### 3. Municipal Liability and Turner's Official Capacity

In her Complaint, Jones makes claims against Turner in his official capacity, as well as against his employer, the Town of Rayville. Jones alleges that the Town of Rayville "tolerated

---

[3] Even crediting Jones' deposition testimony and assuming that Wise told Jones what Turner allegedly said to Jones' supervisors, Wise's statements to Jones constitute inadmissible hearsay evidence, as the record establishes that Wise did not speak to Turner or hear his statements about Jones.

[4] The Court need not reach the remainder of Jones' burden—to show an infringement of some other interest.

and/or ratified" Turner's misconduct by "[f]ailing to properly discipline, restrict, and control the individual defendant"; "[f]ailing to take adequate precautions in the hiring, promotion, and retention of police personnel, including the Defendant officers [sic] herein"; and "[f]ailing to establish and/or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct." [Doc. No. 1, p. 6]. Jones alleges that the Town of Rayville "as a matter or policy and practice, has with deliberate indifference failed to properly train or supervise Defendant Tamario Turner so as to prevent violations of constitutional rights of citizens, including Plaintiff, hereby causing Tamario Turner to engage in unlawful conduct." *Id.* Jones also alleges that "the Town of Rayville had knowledge, or, had [it] diligently exercised [its] duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs which were done . . . were about to be committed." *Id.* Finally, Jones alleges that the Town of Rayville had the "power to prevent or aid in preventing the commission" of the alleged wrongs, but failed to exercise "reasonable diligence." *Id.* at p. 7. Jones concluded by stating that her "allegations against the [Town of Rayville] are based on information and belief and are likely to have evidentiary support after a reasonable opportunity for factual investigation." *Id.*

First, the Court finds that the allegations against Turner in his official capacity, which duplicate the claims against the Town of Rayville, are subject to dismissal. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001). To this extent, Defendant's Motion for Summary Judgment is GRANTED.

Further, the Court finds that summary judgment is appropriate regarding Jones' claims against the Town of Rayville because Jones has failed to produce evidence in support of these claims. *See Kohler v. Englade*, 470 F.3d 1104, 1114-15 (5th Cir. 2006). "In order to hold a

12

municipality liable under § 1983 for the misconduct of one of its employees, a plaintiff must allege that the municipality caused the constitutional violation through its policies or customs" and must "identify any policy, practice, or custom on the part of the [municipality] that could be causally related" to the employee's misconduct.[5] *Id.* at 1115. As Jones has failed to satisfy this burden, Defendants' Motion for Summary Judgment is GRANTED as to Jones' claims against the Town of Rayville.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 29] is DENIED IN PART and GRANTED IN PART. The motion is GRANTED as to Jones' Due Process claims against Turner, claims against the Town of Rayville, and claims against Turner in his official capacity. These claims are DISMISSED WITH PREJUDICE. The motion is otherwise DENIED, and Jones' other claims remain pending for trial.

MONROE, LOUISIANA, this the 21 day of September, 2011.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[5] In her deposition testimony, Jones' former supervisor, Arlena McDonald, states that Turner told her that his supervising officer—"maybe the chief"—instructed him to contact the probation office. [Doc. No. 29-4, p. 13]. To the extent that Jones might attempt to rely on this testimony to support municipal liability under the "single incident exception," her claim would fail because no record evidence identifies the supervising officer or indicates whether he was a final policymaker. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (noting that, while a single decision by a policymaker may give rise to municipal liability, "this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker").

13